## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Domenic J. Tiberi, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Detective Sergeant with the Millis Police Department and have been assigned as a Task Force Officer with the Drug Enforcement Administration ("DEA") since October 2011. I am a graduate of the Massachusetts Criminal Justice Training Council Police Academy and have been a Police Officer since 1988. I was assigned as Detective in October 2000.

2. Since October 2011, I have been assigned as a Task Force Officer to the Organized Crime Drug Enforcement Task Force ("OCDETF") Boston Strike Force, which is a strike force incorporating various law enforcement agencies, including DEA, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement Homeland Security Investigations ("HSI"), and the U.S. Marshals Service ("USMS"), among other agencies.

3. I have received training regarding narcotics investigations while attending the Massachusetts Police Academy and have attended additional specialized training courses in furtherance of my past and current assignments. During the course of my law enforcement career, I have participated in hundreds of drug-related investigations that have resulted in drug seizures, arrests, and state and federal convictions.

4. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the

execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

5. Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. However, drug traffickers are aware of law enforcement's use of electronic surveillance, and thus frequently endeavor to thwart detection by changing cellular telephone numbers, using multiple cellular phones at the same time, and/or utilizing prepaid cellular phones where the user of the phone is not required to provide personal identifying information. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am familiar with the manner in which drug traffickers use coded, veiled, or slang-filled telephone conversations when discussing their illegal business, in an effort to further prevent detection, and that they often use text messages in lieu of telephone calls to avoid speaking over the telephone.

6. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports given to me by other DEA Agents, Task Force Officers, and other investigators. Since this affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of a criminal complaint, I have not included details about every aspect of the investigation. The dates and times cited in this affidavit are approximate.

**PURPOSE OF AFFIDAVIT**

7.     This affidavit is being submitted in support of a criminal complaint against Juan Carlos TAVERAS Nunez (hereinafter, "TAVERAS" or the "Defendant"), charging that on March 31, 2022, he did knowingly and intentionally possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §841.

**Probable Cause**

8.     In March 2022, a source of information (SOI-1)[1] provided information to DEA agents about a New York area based drug trafficker known to SOI-1 as "Roberto." According to SOI-1, Roberto was in possession of 5,000 "M 30s," which he was willing to sell for $4.50 per pill. I know that "M/30" is a marker for Percocet 30 mg pills, which are schedule II controlled substances containing oxycodone.

9.     SOI-1 provided a telephone number as a contact number for Roberto and said that Roberto was willing to provide a sample of 10 pills to a buyer who was interested in purchasing the pills. Based on the quoted price per pill, I believe the pills are likely counterfeit pills. Based on my training and experience, I know that drug traffickers often use fentanyl, a schedule I synthetic opioid controlled substance, to manufacture counterfeit oxycodone pills, including Percocet 30 mg pills.

---

[1] SOI-1 is a DEA documented informant. SOI-1 has been providing information since 2019. In 2013, SOI-1 was arrested and charged with a drug offense and was later convicted. SOI-1 has provided information in other investigations that has led to seizures of drugs, money, and firearms. SOI-1 began cooperating with DEA on behalf of a third party who was facing federal drug charges. I believe the information provided by SOI-1 is reliable.

10. At the direction of agents, a second source of information (SOI-2)[2] called the number provided by SOI-1 to arrange for the delivery of the pill sample. SOI-2 spoke with a male later identified as TAVERAS about the delivery. After the initial conversation, TAVERAS used a different phone ((862) 378-9500) to send a text message to SOI-2 asking SOI-2 to call him. All communications between SOI-2 and TAVERAS were consensually recorded and preserved.

11. On March 22, 2022, SOI-2 called TAVERAS, who agreed to meet SOI-2 the following day to deliver the pill sample. TAVERAS agreed to meet SOI-2 at the Burlington Coat Factory, located in a shopping plaza at 272 Garfield Avenue in Cranston, Rhode Island.

12. On March 23, 2022, SOI-2 called TAVERAS and told him that SOI-2 was sending a courier to pick up the sample. Investigators set up surveillance in the vicinity of the Burlington Coat Factory in Cranston. At approximately 2:50 p.m., TAVERAS sent a text message to SOI-2 saying he was approximately two minutes away and would be driving a Honda Pilot. At approximately 2:55 p.m., investigators observed a black Honda Pilot, bearing New Jersey registration K62NBA (the "Honda Pilot"), arrive in the parking lot of the shopping plaza. TAVERAS was in the driver's seat and a female was in the front passenger's seat. The occupants of the Honda Pilot appeared to be looking around the parking lot as TAVERAS drove slowly toward the Burlington Coat Factory and parked. At 2:58 p.m., TAVERAS called SOI-2 to say he had arrived in a Honda Pilot. SOI-2 replied that his courier was there and was wearing a red sweater.

---

[2] SOI-2 is a paid DEA documented informant who has been cooperating since February 2022. SOI-2 has a 2018 prior federal drug conviction. SOI-2 has provided information related to other drug trafficking investigations, and investigators have corroborated some of the information to the extent possible. I believe information provided by SOI-2 is reliable.

13. A Spanish speaking undercover officer ("UC"), posing as SOI-2's courier, arrived at the location and stood outside of the Burlington Coat Factory. TAVERAS got out of the Honda Pilot, stood next to the vehicle, and then walked toward the front entrance of the Burlington Coat Factory. TAVERAS again texted SOI-2 stating he was "there."

14. TAVERAS and the UC made eye contact, and TAVERAS approached the UC and handed the UC a small container. After a brief exchange, TAVERAS returned to the Honda Pilot. TAVERAS then sent a text message to SOI-2, informing SOI-2 that he had met with the UC ("I saw him. He was wearing a hoodie."). TAVERAS then departed the area in the Honda Pilot.

15. Inside the small container that TAVERAS gave to the UC were three small cellophane bags, each containing five blue pills, which were stamped "M" on one side and "30" on the other. A field test was performed on the pills, which came back inconclusive for controlled substances. Based on the appearance of the pills, I believe the pills are counterfeit pills that were made to resemble Percocet 30 mg pills. Based on my training and experience and knowledge of this investigation, I believe the pills likely contain fentanyl. I also know from my training and experience that the field test device (TruNarc) often does not detect fentanyl. The pills were sent to the DEA Laboratory for testing.

16. After the exchange, SOI-2 sent TAVERAS a text message stating that he would test the pills and if they were good quality, SOI-2 would call TAVERAS back. TAVERAS replied, "Well, I hope everything comes out good."

17. On March 25, 2022, the Honorable Patricia A. Sullivan, United States Magistrate Judge, District of Rhode Island, issued a warrant authorizing investigators to obtain precise location information for the (862) 378-9500 phone, which TAVERAS was using to communicate with SOI-2.

18. On March 30, 2022, SOI-2 contacted TAVERAS and asked to purchase an additional 10,000 pills. TAVERAS agreed to deliver the pills the following day.

19. On March 31, 2022, SOI-2 and TAVERAS had a series of calls arranging a location and time to meet. SOI-2 gave TAVERAS a location in Foxborough, Massachusetts, and agreed to pay $55,000 for the 10,000 pills. SOI-2 told TAVERAS that his courier (*i.e.*, the UC) would be picking up the pills.

20. That same day, at approximately 12:59 p.m., DEA agents in Paterson, New Jersey went to a residence located at 38 Passaic Street, Paterson, New Jersey, which is the location where TAVERAS's phone indicated it was located. Agents observed TAVERAS exit the residence and enter the driver's seat of the Honda Pilot.

21. TAVERAS drove the Honda Pilot to the agreed upon location in Foxborough, arriving at approximately 5:00 p.m. TAVERAS contacted SOI-2 advising that he had arrived. Surveillance units observed TAVERAS park the Honda Pilot. A female was in the passenger seat. The UC approached the Honda Pilot and entered the backseat. The UC requested to see the pills. TAVERAS indicated that the pills were in a hide (*i.e.*, an aftermarket hidden compartment). The UC got out of the Honda Pilot to allow TAVERAS to open the hide and then reentered the vehicle approximately three minutes later. TAVERAS showed the UC one blue circular pill bearing the markings of "M" on one side and "30" on the other.

22. At approximately 5:05 p.m., investigators approached the Honda Pilot and placed TAVERAS under arrest. TAVERAS was advised of his Miranda warnings on two occasions in Spanish. TAVERAS was transported to the Massachusetts State Police, Foxborough Barracks for booking. The Honda Pilot was also transported to the State Police Barracks.

23. Investigators located and opened the hide, which was in the rear passenger side seat area of the Honda Pilot, and recovered five large, clear Ziplock packages, each estimated to contain approximately 2,000 blue pills bearing the markings "M" and "30," which were identical to the sample of pills TAVERAS delivered to the UC on March 23. The pills appeared to have been crudely pressed and had inconsistent markings and slight color disparities. A field test was performed on the pills, which came back inconclusive for controlled substances. Based on the appearance of the pills, I believe the pills are counterfeit pills made to resemble Percocet 30 mg pills. Based on my training and experience and knowledge of this investigation, I believe the pills likely contain fentanyl. The pills will be sent to the DEA Laboratory for testing.

## CONCLUSION

Based on the information set forth above, I believe probable cause exists to believe that Juan Carlos TAVERAS Nunez has engaged in a violation of 21 U.S.C. §841, namely the possession with intent to distribute controlled substances.

I, Domenic J. Tiberi, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

DOMENIC J. TIBERI
DEA TASK FORCE OFFICER

Sworn before me by telephone in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 this  1 st day of April 2022.

HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS